# IN THE COURT OF APPEALS OF IOWA

No. 18-1460
Filed July 24, 2019

**ESTATE OF WILBUR M. ARNOLD,**
**WILLIAM D. ARNOLD,**
    Plaintiff-Appellant,

**vs.**

**BRUCE C. ARNOLD, Individually and as Executor, KAREN L. HEUER, as Executor, STEVEN C. ARNOLD, as Executor, BCA FARMLAND CORPORATION, ARLYS L. ARNOLD, DON R. ARNOLD, LANCE J. ARNOLD, MARY A. ARNOLD, and WARREN J. ARNOLD,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Hancock County, Colleen D. Weiland, Judge.

A nephew of the decedents appeals the district court's grant of summary judgment for various relatives on his claims of undue influence and tortious interference with a bequest. **AFFIRMED.**


David J. Dutton and Nathan J. Schroeder of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellant.

Michael A. Smith and Lawrence B. Cutler of Craig, Smith & Cutler, LLP, Eldora, for appellees BCA Farmland Corp, Bruce C. Arnold, Mary A. Arnold, and Warren J. Arnold.

Joel J. Yunek of Yunek Law Firm, P.L.C., Mason City, for appellees Karen L. Heuer and Steven Arnold.

Considered by Vaitheswaran, P.J., Tabor, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**TABOR, Judge.**

William Arnold did not receive the inheritance of farmland he anticipated from either his aunt Evelyn or his uncle Wilbur.[1] After their deaths, he contested Wilbur's will and claimed family members tortiously interfered with his expected bequest from Evelyn. The district court found no genuine issue of material fact and granted the defendants' motion for judgment as a matter of law. On appeal, William insists he generated jury questions on both claims. Finding summary judgment was proper, we affirm.

## I.      Facts and Prior Proceedings

Siblings Wilbur, Evelyn, Roy, and Bruce inherited Hancock County farmland from their father, Elmer Arnold. Neither Wilbur nor Evelyn ever married or had children.[2] By contrast, their brothers Roy and Bruce each had four children. Roy's children included William—who is the plaintiff here—as well as Don, Arlys, and Lance, defendants in William's petition. William also sued Bruce and his four children: Karen Heuer, Warren, Mary, and Steven. To complete the roster, William listed as a defendant Bruce's family farm corporation, BCA Farmland.

Of Elmer's children, only Wilbur and Roy went into farming. In turn, Roy's children, William and Lance, farmed with their uncle Wilbur for twenty years, until Wilbur retired in 1995. William recalled "butting heads" with Wilbur in the late 1980s over what chemicals to apply in the farming operation but claims it did not impact their relationship. William also rented farmland from his aunt Evelyn and

---

[1] Because many people involved here share the surname Arnold, we will use their first names for clarity.

[2] Wilbur farmed the family land. Evelyn pursued a career as a teacher in Charles City. After she retired, she moved back to Klemme to live with Wilbur.

his uncle Bruce. William alleges Bruce controlled the rental terms for both his land and Evelyn's.

In his summary judgment evidence, William highlights a letter Bruce drafted on BCA Farmland Corporation letterhead in 1992, telling his four children:

> Evelyn and Wilbur are originating and changing their wills. Their present thinking is to leave much of their farmland to all four of you in undivided one-fourth interests. Their intent and, as you know, my goal is that the Arnold farmland remain within the family through your generation, and hopefully through the next generation.

The letter explained BCA Farmland "provides the legal framework that can permit this to happen." In closing, Bruce expressed his hope the inheritance transfers would not take place until well into the future and noted "their plans are certainly generous and it is in the interest of us all to carry them out."

That letter was prescient in its desire that Evelyn and Wilbur would live long lives and their estates would be a future concern. Evelyn died in 2012, at age 90. She had signed her latest will in 2008. The estate closed the probate in 2013. William did not contest her will. In fact, as part of those probate proceedings, he accepted a bequest of $103,000 from her estate. But William did offer an unsigned copy of Evelyn's 1992 will. A codicil to that will expressed her intent to bequeath William forty acres of land known as the Tice farm.

Wilbur died in 2016, at the age of 101. Wilbur's estate plan evolved somewhat over his lifetime. Wilbur's 1992 will would have given his farmland to his siblings, Bruce, Roy, and Evelyn, and Bruce's four children in equal shares. A 1999 codicil provided that a share of the farmland once bequeathed to Bruce's children would go to Lance, William's brother. William did not inherit under either of those instruments.

Wilbur's 2003 will originally left eighty acres to both Bruce and another eighty acres to Roy's four children (including William) in equal shares.[3]  A first codicil to the 2003 will dated 2007 conveyed 52 percent of the residuary to Lance.  A second codicil dated 2009 disinherited two of Roy's children (William and Arlys) from the one-quarter share of the eighty acres of farmland.  A third codicil dated 2010 increased Lance's share of the residuary to ninety percent.  A fourth codicil changed the description of farmland bequeathed to Bruce's children.  And a fifth codicil dated 2012 changed the will's executors to his niece Karen and nephew Steve.  William took nothing under Wilbur's 2003 will subject to the 2009 codicil.

In reaction to being disinherited, William filed a lawsuit in September 2016, alleging his uncle Bruce, his cousins, and his siblings "used their position of trust and confidence they had over Wilbur Arnold to unduly influence Decedent into leaving all of his farmland to Bruce Arnold, the children of Bruce Arnold (Mary, Steven, Karen, and Warren), and BCA Farmland Corporation."  The lawsuit also alleged the defendants "by means of fraud, deception, defamation, undue duress[,] and other tortious and malicious conduct, prevented [William] from receiving his inheritance from Evelyn Arnold's Estate."

In March 2018, the district court granted the defendants' motion for summary judgment.  In response to William's motion, the court issued an expanded ruling addressing the existence of a "confidential relationship" between Bruce and Wilbur.  *See* Iowa R. Civ. P.1.904(2).  William appeals.

---

[3] Wilbur's attorney testified the change in the 2003 will reflected the fact Roy required nursing care, and to prevent reimbursement under Title XIX, Wilbur made the bequests directly to Roy's children.  Roy died in 2008.

## II.      Scope and Standards of Review

We review the grant of summary judgment for correction of legal error.  *In re Estate of Graham*, 690 N.W.2d 66, 69–70 (Iowa 2004).  The district court must render summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law

Iowa R. Civ. P. 1.981(3).

We view the record in the light most favorable to William and afford him all reasonable inferences arising from the undisputed evidence.  *See Graham*, 690 N.W.2d at 70.

## III.      Analysis

The district court was unimpressed by the evidence William presented to combat the summary judgment motion.  The court opined: "[T]he record here reflects nothing more than speculation that Bruce or any other defendant engaged in fraud, duress or other independently tortious action to influence or induce Evelyn or Wilbur's beneficiary designations or testamentary decision-making."  On appeal, William contends when viewed in the light most favorable to his claims, the record was adequate to generate a jury question on both counts.  We will address each issue in turn.

## A. Will Contest

To set aside Wilbur's will on grounds of undue influence, William must prove four elements:

> (1) Wilbur was susceptible to undue influence;
> (2) the defendants had an opportunity to exercise undue influence and effect their wrongful purpose;
> (3) the defendants were inclined to unduly influence Wilbur to procure an improper favor; and
> (4) the result, reflected in the will, was the clear effect of undue influence.

*See In re Estate of Bayer*, 574 N.W.2d 667, 671 (Iowa 1998); *see also Burkhalter v. Burkhalter*, 841 N.W.2d 93, 106 (Iowa 2013) (clarifying that contestant must prove undue influence by a preponderance of the evidence, but the causation element requires clear proof).

For purposes of the summary judgment motion, the defendants concede the opportunity and inclination elements. That leaves in play the first and fourth elements—Wilbur's susceptibility and causation.

On the first element, "undue influence means a substitution of the will of the person exercising the influence for that of the testator." *In re Estate of Dashiell*, 94 N.W.2d 111, 114 (Iowa 1959). A person "who is infirm and mentally weak is more susceptible to influence than one who is not." *Boehm v. Allen*, 506 N.W.2d 781, 784 (Iowa Ct. App. 1993). A suspicion (though not a presumption) of undue influence arises when the dominant party in a confidential relationship participates in the preparation or execution of a contested will. *Bayer*, 574 N.W.2d at 675.

The district court found no genuine issue of material fact surrounding the claim that Wilbur was susceptible to undue influence from his brother Bruce or

other family members. The witnesses who knew Wilbur described him as bright, independent, and strong-willed until the end of his days. At age 100, Wilbur renewed both his driver's license and his permit to carry concealed weapons. Even William admitted in his deposition that Wilbur was an "in-charge type" of person.

To contradict the summary judgment ruling, William lists Wilbur's various health issues and the help Wilbur received from family members in his later years. But those natural circumstances of aging do not show Wilbur was so "infirm or mentally weak" that he would be susceptible to undue influence. And the district court found the evidence, even viewed in the light most favorable to William, did not show Bruce's dominance over Wilbur. We find no error in the court's conclusions.

On the fourth element, William must show more than an "unnatural, unjust, or unreasonable" result. *See In re Estate of Davenport*, 346 N.W.2d 530, 532 (Iowa 1984). The *Davenport* court delineated the danger of such a broad formulation: "Any time a will provides for other than an equal distribution, a disappointed heir could claim an inference of undue influence and a corresponding fact question because reasonable minds could always differ about the purpose of the distribution." *Id.* at 533. Like the contestant in *Davenport*, William offers just bare suspicions that the distributions in Wilbur's will resulted from undue influence. *See id.* Given the weakness of William's evidence, summary judgment was proper on the will-contest claim.

### B. Tortious Interference with a Bequest

To prove the defendants were liable on his second claim, William had to show they used tortious means to intentionally prevent a bequest from Evelyn he would have otherwise received.[4]  *See Huffey v. Lea*, 491 N.W.2d 518, 521 (Iowa 1992) (citing Restatement (Second) of Torts § 774B (Am. Law Inst. 1979)). Phrased more expansively, this tort has five elements: (1) The plaintiff expected to receive a bequest from a third party; (2) the defendants knew of the plaintiff's expected bequest; (3) the defendants intentionally and improperly interfered with the plaintiff's expectancy through undue influence or other tortious means; (4) there was a reasonable certainty the plaintiff would have received an inheritance but for the defendants' interference; and (5) the plaintiff suffered damages as a result of his loss of the bequest.  *In re Estate of Boman*, No. 16-0110, 2017 WL 512493, at *10 (Iowa Ct. App. Feb. 8, 2017).

William claims the unsigned codicil to Evelyn's 1992 will presented him "an expectancy to inherent 40 acres of farmland."  Besides relying on that document, William and his wife both testified Evelyn personally shared her intent to bequeath him that property in her will.  William further contends Bruce intentionally interfered with that bequest by exerting undue influence on Evelyn to revoke the prior will and codicil in 2008.  Finally, William contends Evelyn was susceptible to pressure from her brother because she was "not a leader and would go along with what others said, especially Bruce."

---

[4] The defendants assert William generates no material question of fact but also contend William's claim for tortious interference is barred by the statute of limitations and the doctrine of issue preclusion.  Because we agree with the first assertion, we do not reach the time bar or res judicata questions.

Even viewing the evidence in the light most favorable to William, we find he failed to establish tortious conduct by the defendants deprived him of a valid expectancy. His proof at the summary judgment stage did not offer "a reasonable degree of certainty" that the bequest of farmland would have been in effect at the time of Evelyn's death but for undue influence by Bruce or other relatives. *See Hosier v. Hosier ex rel. Est. of Hosier*, No. 00-1225, 2001 WL 1451137, at *7 (Iowa Ct. App. Nov. 16, 2001) (citing Restatement (Second) of Torts § 774B cmt. d). As the district court determined, William's contention Evelyn was susceptible to Bruce's "undue influence" was "nothing more than speculation." And if Bruce used "legitimate means" to persuade Evelyn to rethink the bequest to William, he was not liable for tortious interference. *See* Restatement (Second) of Torts § 774B cmt. c. The district court found, and we agree, William produced insufficient evidence to submit the intentional interference with a bequest claim to a jury. Thus, we affirm the grant of summary judgment.

**AFFIRMED.**